IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Errol Holmes Jr.,** <br> Plaintiff, <br><br> v. <br><br> **Transunion, LLC** <br> Defendant. | **CIVIL ACTION** <br><br><br> No. **2:24-cv-04433** |

### MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                              **November 5, 2024**

Before the Court is Defendant, Trans Union LLC's, Motion to Dismiss *pro se* Plaintiff, Errol Holmes Jr.'s, pro se Amended Complaint. Am. Compl., ECF 10. For the reasons stated below, the Court will grant Defendant's Motion to Dismiss with prejudice.

### I.   PROCEDURAL HISTORY

Holmes initiated this civil action on May 15, 2024, by filing a Complaint in the Court of Common Pleas of Philadelphia County. Compl. at 3, ECF 5. The Complaint was styled as a "Notice to Demand Arbitration." Id. at 4. Trans Union LLC ("TUL") claims that it was never served and first received notice of the Complaint on July 24, 2024, via Plaintiff's filing of a consumer complaint with the Consumer Financial Protection Bureau. Notice of Removal ¶ 3, ECF 1. On August 23, 2024, Defendant filed a timely Notice of Removal (ECF 1) and on August 29, 2024, moved to dismiss Plaintiff's Complaint (ECF 6). On September 3, 2024, Plaintiff filed a Motion for Leave to Amend (ECF 7), that the Court granted on September 11, 2024, (ECF 8). Plaintiff filed his Amended Complaint (ECF 9) on September 26, 2024, and Defendant moved to dismiss the Amended Complaint (ECF 10) on October 10, 2024. On November 1, 2024, Defendant filed a Motion to Dismiss pursuant to Local Civil Rule 7.1(c)

1

which allows a district court to dismiss an unopposed motion except as provided under Federal Rule of Civil Procedure 56. Def. Notice of Pl. Non-Opposition, ECF 11. Later that same day, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss. Pl. Resp. to MTD, ECF 12.

## II.    FACTUAL ALLEGATIONS

The allegations in the Amended Complaint are brief but unclear. Holmes asserts five violations of the Fair Credit Reporting Act (FCRA), one under Section 1681e(b) and the remaining under Section 1681i(a).[1] All of Holmes' claims relate to TUL's reporting of his 2019 bankruptcy. In his Amended Complaint, Holmes assumes the reader's familiarity with the facts of the original Complaint. Holmes alleges that TUL (1) reported unverified information when it reported Holmes' 2019 bankruptcy, and (2) failed to conduct a reasonable investigation into the dispute.

Holmes alleges that the bankruptcy reported by TUL is unverified because when Holmes contacted the Bankruptcy Court, he was told that "it is not [the Court's] policy to report information to credit reporting agencies." Am. Compl. at 7. Additionally, Holmes disputed LexisNexis' reporting of the bankruptcy, and following an investigation, LexisNexis determined that the bankruptcy was unverifiable. Id. at 9. Holmes contends that since the Bankruptcy Court did not send the bankruptcy information to TUL and LexisNexis determined that the information

---

[1] Holmes' allegations do not always correspond to the FCRA provisions that he claims TUL violated. In liberally construing Holmes' pleadings, the Court assesses the sufficiency of the Complaint against both the FCRA provisions cited by Holmes and the FCRA provisions that address the alleged conduct. For example, Holmes alleges a violation of 15 U.S.C. § 1681i(a)(4) (Count III) because "Defendant failed to delete information that was inaccurate or unverifiable, causing Plaintiff emotional distress and credit damage." Am. Compl. ¶¶ 27-28. In assessing the sufficiency of this pleading, the Court looks to both § 1681i(a)(4) regarding the time for reinvestigation and § 1681i(a)(5) regarding the treatment of inaccurate or unverifiable information.

was unverifiable, TUL must have received the bankruptcy information from a "third-party" and thus the information is unverifiable.

Holmes also alleges that TUL failed to conduct a reasonable investigation into his dispute, submitted on February 27, 2024. Id. ¶ 5. Holmes claims that on March 9, 2024, TUL responded to his dispute by informing him that the personal identification that he provided did not meet their requirements. Id. ¶ 10. Holmes alleges that the information that he provided was "valid and met all necessary criteria." Id. The TUL letter appears to inform Holmes that the proof he submitted of his current address was invalid because it was either too old, illegible, not a qualifying document, and/or that only one qualifying document rather than two was submitted. Id. at 10. Holmes also alleges that he requested proof of an investigation so that he could "confirm or deny validation" and that "[a]fter approximately 60 days of receiving no response from [TUL]" he initiated this lawsuit. Id. ¶¶ 14-15.

Holmes seeks actual and/or statutory damages and punitive damages under 15 U.S.C. § 1681n(a) as well as reasonable attorneys' fees and costs. Id. at 3-4.

### III.  STANDARD OF REVIEW

Pursuant to Local Rule 7.1, "[i]n the absence of timely response, [a] motion may be granted as uncontested except as provided under Fed. R. Civ. P 56." Local Rule 7.1(c). While *pro se* Plaintiff's Response was not timely, the Court will still review the motion on the merits. Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal

citations omitted). The Court accepts all facts alleged in Holmes' Amended Complaint as true and in determining whether Holmes has stated a plausible claim, draws all reasonable inferences in Holmes' favor. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). While the Court "construe[s] ... *pro se* filings liberally[,]" (Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021)), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. That is, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

IV. **DISCUSSION**

Holmes asserts several claims based on the alleged failures of TUL to fulfill its requirements under FCRA Sections 1681e(b) and 1681i(a). Specifically, he contends that TUL failed to (1) follow reasonable procedures to ensure maximum possible accuracy of the disputed information in violation of § 1681e(b) (Count I), (2) comply with reinvestigation requirements by not forwarding all relevant information to the furnishers in violation of § 1681i(a)(2) (Count II), (3) delete information that was inaccurate or unverifiable in violation of § 1681i(a)(4) (Count III)[2], (4) establish proper procedures to prevent false information from being reported during reinvestigation in violation of § 1681i(a)(6)(B)(iii) (Count IV)[3], and (5) provide a written description of the procedures used to determine the accuracy and completeness of the disputed information in violation of § 1681i(7) (Count V)[4].

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47,

---

[2] The Court also assesses Count III under § 1681i(a)(5) regarding treatment of inaccurate or unverifiable information.
[3] The Court also assesses Count IV under § 1681i(a)(5)(C) regarding procedures to prevent reappearance.
[4] The Court assesses Count V under § 1681i(a)(7) regarding description of reinvestigation procedures.

52 (2007); see also SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 357 (3d Cir. 2011) (the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010))).  Under the FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers', such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014).

15 U.S.C. § 1681e(b) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  To establish negligent noncompliance with § 1681e(b) a plaintiff must establish that: "(1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry."  Cortez, 617 F.3d at 708 (internal citations omitted).

15 U.S.C. § 1681i "confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy."  Klotz v. Trans Union, LLC, 246 F.R.D. 208, 211 (E.D. Pa. 2007) (McLaughlin).  For Holmes "to establish that [TUL] is liable for failing to reinvestigate a dispute under that provision, [he] must establish that [TUL] had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation."  Cortez, 617 F.3d at 713.  A consumer reporting agency "may terminate a reinvestigation of information disputed by a consumer ... if the agency reasonably determines that the dispute by

the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).

Thus, a threshold requirement for both 15 U.S.C. Section 1681e(b) and Section 1681i claims is that the reported information is inaccurate. Angino v. Trans Union LLC, 784 F.App'x 67, 69 (3d Cir. 2019) (unreported) ("To prevail under either [a § 1681e(b) or § 1681i(a)] claim, then . . . [plaintiffs] must show that their credit report contains inaccurate information."). A court "does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate." Holland v. Trans Union LLC, 574 F. Supp. 3d 292, 297-98 (E.D. Pa. 2021) (Pratter). A consumer report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." Schweitzer v. Equifax Info. Sols. LLC, 441 F.App'x 896, 902 (3d Cir. 2011) (*per curiam*) (unreported) (internal citations omitted).

As noted above, to establish a violation under either Section 1681e(b) or Section 1681i(a), Holmes must allege that the reported information was inaccurate. Angino, 784 F.App'x at 69. Holmes fails to allege facts to support a plausible claim under either Section 1681e(b) or Section 1681i(a) because he does not allege anywhere in the Amended Complaint that the bankruptcy information is inaccurate or that the bankruptcy petition reported by TUL does not belong to him. Rather, Holmes asserts only conclusory allegations that TUL received the bankruptcy information from a third-party and that the information is thus unverified. Am. Compl. ¶¶ 17-19. Holmes largely bases this allegation on a letter from the Bankruptcy Court that reads: "[i]t is not the policy of the court to report to any credit agency." Id. ¶ 7.

However, TUL never claimed that the Bankruptcy Court provided TUL with Holmes' bankruptcy petition. Rather, TUL explained that the petition is public record and attached a copy of the petition, obtained from PACER. MTD Am. Compl. at 2-3, ECF 10-1; MTD Am. Compl. Ex. A. Bankruptcy petitions are matters of public record and the Court may consider the bankruptcy petition in determining whether Holmes has stated a plausible claim. Boyle v. PMA Med. Specialists, LLC, 754 F.App'x 93, 94 n.1 (3d Cir. 2019) ("We accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, Phillips, 515 F.3d at 233, and may consider matters of public record, such as the items filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania, see Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)."). TUL claims that the bankruptcy petition contains Holmes' full name, the last four digits of his social security number, and his current address. MTD Am. Compl. at 3. Holmes does not dispute the accuracy of the information, only the source from which TUL obtained the information.

Holmes' allegation that TUL obtained the bankruptcy information from a "third-party" is conclusory and not supported by the record. The Bankruptcy Court for the Eastern District of Pennsylvania "has no jurisdiction over credit consumer reporting agencies and the court does not notify reporting agencies when a bankruptcy case is filed. Nor can the court request that a specific record be changed. Information on [a] credit report has generally been reported by [] creditors and is gathered from public sources by the reporting agencies." The Bankruptcy Court also explains on its website that the FCRA permits consumer credit agencies to report a bankruptcy on a person's credit report for up to ten years after the date that the bankruptcy was

filed.[5] As the Bankruptcy Court notes, reporting agencies gather bankruptcy information from public sources, as TUL did here.

Likewise, Holmes' allegation that TUL conducted an insufficient investigation fails because Holmes does not allege that the bankruptcy information reported by TUL was inaccurate. Additionally, the FCRA permits a consumer reporting agency to "terminate a reinvestigation of information disputed by a consumer ... if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A). TUL was permitted to terminate the reinvestigation because Holmes' dispute was frivolous and irrelevant, TUL did not obtain the bankruptcy information from a "third-party," but rather from PACER, where it is a matter of public record.

Finally, Holmes' Response to Defendant's Motion to Dismiss fails to substantively address the deficiencies in his Amended Complaint. Holmes argues that TUL's "handling of [his] bankruptcy information was inaccurate" and that the "bankruptcy information contains inaccuracies arising from [TUL's] practice of purchasing bankruptcy records from a third-party vendor, rather than from the original source." Pl. Resp. to MTD at 1. Nowhere in his Response does Holmes address how the bankruptcy petition itself is inaccurate. Moreover, Holmes fails to address that the bankruptcy petition is a public record.

## V.   CONCLUSION

For the foregoing reasons Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is dismissed with prejudice. The Clerk shall terminate this case.

---

[5] Eastern District of Pennsylvania Bankruptcy Court, *Frequently Asked Questions*, https://www.paeb.uscourts.gov/frequently-asked-questions/debtors_faqs?page=1.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-4433 Holmes v. Transunion\24-4433 MTD Memo final.docx